CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAY 21 2009
JOHN F. CORCORAN, CLERK
BY: H McDonao
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| THOMAS FRANKLIN BOWLING, ) | Civil Action No. 7:09-cv-00085 |
|     Petitioner, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| GENE M. JOHNSON, et al., ) | By: Hon. Jackson L. Kiser |
|     Respondents. ) | Senior United States District Judge |

Petitioner Thomas Franklin Bowling, a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Bowling claims that the Virginia Parole Board violated his constitutional rights when it denied his early release from incarceration. Bowling previously sought state habeas relief, but the Supreme Court of Virginia dismissed his habeas petition as frivolous. After screening his submissions, I dismiss Bowling's petition for failing to state a claim upon which relief may be granted and, alternatively, because the Supreme Court of Virginia's ruling was not contrary to, or an unreasonable application of, federal law.

I.

Bowling alleges the following facts. A Virginia court sentenced Bowling in 1998 to two life sentences for robbery and capital murder and a six-year sentence for a firearm offense. (Br. Supp. Pet. (docket #2) 2.) Bowling became eligible for parole in March 2005 after serving seventeen years of his life sentence, and the Virginia Parole Board ("Board") annually reviewed his status five times since 2005. The Board found Bowling unsuitable for release from 2005 to 2007 because of the serious nature and circumstances of the crime. The Board found Bowling unsuitable for release from 2008 to 2009 because of the serious nature and circumstances of the crime and his prior offense history indicates a disregard for the law. (Id.) Bowling appealed the decision via a petition for a writ of habeas corpus to the Supreme Court of Virginia, which

summarily dismissed his case on January 16, 2009, as frivolous.[1]

Bowling alleges that the Supreme Court of Virginia's disposition of his claims were contrary to, or an unreasonable application of, federal law. Bowling argues the following claims:

1. The Board's denial of parole, failure to follow state law, and impairment of contract violated due process under the Fourteenth Amendment;
2. The Board's denial of parole violated the equal protection clause of the Fourteenth Amendment;
3. The Board's denial of parole violated the Ex Post Facto clause of the United States Constitution;
4. The Board failed to perform its quasi-judicial function; and
5. The Supreme Court of Virginia violated separation of powers embodied in the Virginia Constitution.

II.

A.

I may not grant a petition for a writ of habeas corpus in a case where a state court considered a claim on its merits unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court's decision involves an unreasonable application of federal law when the state court "correctly identifies the governing legal rule [from the Supreme Court's

---

[1] Bowling states that he filed his state habeas petition on December 8, 2008, about the Board's order denying parole issued on May 2, 2008. (Br. Supp. Pet. 2.) Bowling further states, "The Supreme Court of Virginia summarily dismissed the petition as frivolous on January 16, 2008." (Id.) After reviewing the state court's relevant data, I believe Bowling intended to more accurately state January 16, 2009. The distinction is important as his petition would otherwise be untimely.

2

cases] but applies it unreasonably to the facts of a particular . . . case," id. at 407-08, or "applies a precedent in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not reasonable [or] fails to apply the principle of a precedent in a context where such failure is unreasonable," Robinson v. Polk, 438 F.3d, 350, 355 (4th Cir. 2006) (internal quotation marks and citation omitted). "The state court's application of clearly established federal law must be 'objectively unreasonable,' for a 'federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly.'" Jackson v. Johnson, 523 F.3d 273, 277 (4th Cir. 2008) (quoting Williams, 529 U.S. at 409, 411). "The phrase 'clearly established federal law' refers 'to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Id. (quoting Williams, 529 U.S. at 412).

B.

Bowling argues that he has a liberty interest in a full and fair parole review as codified in Virginia statute § 53.1-151.[2] (Br. Supp. Pet. ¶ 3.) Bowling also alleges that the Board arbitrarily and capriciously denied his parole eligibility because the Board did not fully consider his commitment offense, social history, psychological factors, home plan, and institutional behavior within the two days his case was before the Board. (Id. at ¶¶ 2-3.) Bowling relies on Board Chairwoman Helen Fahey's alleged public comment that "anyone convicted of first degree

---

[2] Virginia statute § 53.1-151 only describes when an inmate may become eligible for parole consideration. Nothing in the statute provides guidance when or why the Board would grant parole. Therefore, Bowling's argument fails. Inasmuch as Bowling is proceeding pro se, the court construes his argument under Virginia statute § 53.1-155 ("Investigation prior to release") which describes how and why the Board may grant parole.

3

murder will not be considered for parole until they have completed twenty-five years[,] regardless to their being juveniles convicted before the July 1995 abolishment of parole." (Id. at ¶ 5.)

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570-72 (1972). The first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. Id. at 577; see Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). However, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). Nevertheless, a state may create a liberty interest in parole release if its parole statutes affirmatively require that parole be granted unless certain specified events occur. Id. at 12. However, an inmate has only a mere hope that the benefit will be obtained and that hope is not protected by due process when a state holds out only the possibility of parole. Id. at 11 (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)).

The relevant Virginia statute does not create "a presumption that release will be granted" but absolutely prohibits parole unless the Board decides otherwise. See Va. Stat. § 53.1-155 (1988) (stating no prisoner is granted parole unless the Board investigates and approves parole); Hill v. Jackson, 64 F.3d 163, 170-71 (4th Cir. 1995) (reviewing Va. Code Ann. § 53.1-155); Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir. 1991) (en banc); James v. Robinson, 863 F. Supp. 275, 277 (E.D. Va.), aff'd mem., 45 F.3d 426 (4th Cir. 1994). Therefore, Bowling does not "have any liberty interest in the underlying procedures governing parole determination, so long as

4

the procedures themselves satisfy due process[,]" because he does not have a liberty interest in parole release under Virginia law. See Hill, 64 F.3d at 171 (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 464(1989)).

Bowling also argues that the Board violated due process by not following its own administrative procedures. Violations of procedures under state regulations are insufficient to give rise to any federal due process claim. See Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that a state official's failure to abide by state procedural laws or regulations does not present a federal due process issue) (citing Mathews v. Eldridge, 424 U.S. 319, 334 (1976) and Morrissey v. Brewer, 408 U.S. 471, 481 (1972)); Brandon v. District of Columbia Bd. of Parole, 823 F.2d 644, (4th Cir. 1987) ("[T]he mere fact that the government has established certain procedures does not mean that the procedures thereby become substantive liberty interests entitled to federal constitutional protection under the Due Process Clause."). The "only explicit constitutional requisite is that the Board furnish to the prisoner a statement of its reasons for denial of parole." Franklin v. Shields, 569 F.2d 800, 801 (4th Cir. 1978) (upon rehearing en banc). Bowling acknowledges that he received such a statement. (Br. Supp. Pet. 2, ¶ 29.) Thus, Bowling received all of the process he was due. Id.; see Bloodgood v. Garraghty, 783 F.2d 470, 475 (4th Cir. 1986).

Bowling argues that the Board denied him appropriate good time credit that would allow an earlier release from his life sentence. Bowling's argument that his good time credit allows him a quicker release is flawed. Virginia Code § 53.1-199 states that an inmate convicted of a life or multiple-life sentence may apply accrued good time credit "to reduce the period of time he shall serve before being eligible for parole. . . ." While good time credit may reduce the term of

5

confinement for an inmate with a determinant sentence, Virginia law clearly requires that good time credit earned by an inmate with a life sentence quickens only his parole eligibility date, not his release date. Consequently, Bowling's first claim fails to state a claim upon which relief may be granted.

C.

Bowling alleges that the Board violated his equal protection guarantees under the United States Constitution. Specifically, Bowling believes that the Board refuses to release him on parole because his prior crimes involved violence. (Br. Supp. Pet. ¶ 43.) Bowling also argues that he is a victim of discrimination because other offenders who committed similar or more serious offenses received parole. (Id.) However, "a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . . Mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." Ross v. Estelle, 694 F.2d 1008 (5th Cir. 1983).

Nonetheless, the Equal Protection Clause "does not require things which are different in fact or opinion to be treated in law as though they were the same." Tigner v. Texas, 310 U.S. 141, 147 (1940). "A classification that categorizes inmates based on the type of criminal offenses for which they have been convicted does not implicate a suspect class" or a fundamental right. Wottlin v. Fleming, 136 F.3d 1032, 1036 (5th Cir. 1998) (citing Smallwood v. Johnson, 73 F.3d 1343, 1351 (5th Cir. 1996)); see City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Thus, the rational basis test should be used to evaluate Petitioner's equal protection claim, and the Board reasonably treated violent offenders differently from non-violent

offenders when considering the propriety of their release on parole. See id. at 1037; Grimm v. Jackson, 849 F. Supp. 1127, 1137 (W.D. Va. 1994). Furthermore, the individual and criminal characteristics of two violent offenders will differ in fact and opinion to preclude an equal protection analysis that treats them the same. Accordingly, Bowling's equal protection claims fails to state a claim upon which relief may be granted.

D.

The Ex Post Facto clause provides that "[n]o . . . ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3. "The Ex Post Facto Clause bars enactments, which by retroactive application, increase the punishment for a crime that has already been committed." Warren v. Baskerville, 233 F.3d 204, 206 (4th Cir. 2000) (explaining Collins v. Youngblood, 497 U.S. 37, 42 (1990)). Bowling cannot establish an Ex Post Facto violation based on the Board's reliance on an alleged "sub rosa policy" of denying capital murderers parole until after they serve twenty-five years. "As the constitutional text makes clear, the ex post facto prohibition applies to 'laws.'" Warren, 233 F.3d at 206; see Collins, 497 U.S. at 41 (explaining that Ex Post Facto provision applies only to penal statutes); Prater v. U.S. Parole Comm'n, 802 F.2d 948, 951 (7th Cir. 1986) (en banc) ("The constitutional prohibition against ex post facto laws . . . is directed to the legislative branch of government rather than to the other branches.")). Thus, a "change in an administrative policy . . . does not run afoul of the prohibition against ex post facto laws." Warren, 233 F.3d at 207; see Garner v. Jones, 529 U.S. 244, 250 (2000) (finding that the controlling inquiry for Ex Post Facto analysis is whether retroactive application of the change in law creates a significant risk of increasing the measure of punishment). Therefore, the Ex Post Facto clause does not apply to Bowling because the administrative policy is not a penal law and

7

the policy does not increase the measure of his punishment beyond two life sentences. Accordingly, Bowling's ex post facto arguments fail to state a claim upon which relief may be granted.

E.

Bowling separately argues that the Board failed to perform its "quasi-judicial" function under Virginia law to assess laws and facts relevant to Bowling's incarceration. (Br. Supp. Pet. ¶ 51.) Bowling also argues that the Board violated provisions of the separation of powers provisions in the Virginia constitution. (Id. at ¶¶ 71-76.) Rights arising solely under a state constitution is not within the scope of habeas review under § 2254(a). See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Therefore, this argument fails to state a claim upon which relief may be granted.

Bowling also attempts to collaterally attack his conviction based on facts from his juvenile hearings in 1988. (Br. Supp. Pet. ¶¶ 52-70.) I will not entertain these arguments as they are untimely, procedurally defaulted, or unexhausted. See 28 U.S.C. §§ 2244, 2254; Va. Code § 8.01-654(B)(2) ("No writ shall be granted on the basis of any allegation of facts of which petitioner had knowledge at the time of filing any previous petition."); Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974) (holding petitioner procedurally defaults a non-jurisdictional issue when the claim could have been presented at trial and on appeal but was not).

Bowling also argues that the Board did not give him a fair review because the Board used "rubber stamp" tactics to deny him parole five times. Although Bowling concedes that public safety is a primary factor when considering parole and he is serving two life sentences for capital

8

murder and robbery, he complains that the Board keep rejecting him for parole just because of the serious nature and circumstances of his crimes. Bowling argues that the Board should not just rely on the label of capital murder and robbery but should offer some evidence relevant to his crimes that make him a risk to the community. (Br. Supp. Pet. ¶ 38.) Bowling separately argues that the Virginia Department of Corrections impaired "the obligation of a contract" under Article I, § 10 of the United States Constitution because "Virginia Code § 53.1-199 is classified as a Written Quasi Bilateral Contract. . . ." (Id. at ¶¶ 79-80.) Beyond the intertwined constitutional claims discussed elsewhere in this memorandum opinion, I find these arguments to be wholly frivolous as an indisputably meritless legal theory and based on facts that are clearly baseless. See Neitzke v. Williams, 490 U.S. 319, 327 (1989); see also Va. Code § 53.1-155.

III.

For the foregoing reasons, I dismiss Bowling's petition for failing to state any claim upon which relief may be granted and alternatively because the Supreme Court of Virginia's ruling was not contrary to, or an unreasonable application of, federal law.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the petitioner.

ENTER: This 21st day of May, 2009.

*Jackson L. Kiser*
Senior United States District Judge

9

Case 7:09-cv-00085-JLK-mfu   Document 5   Filed 05/21/09   Page 9 of 9   Pageid#: 77